UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZABEL AMIRI,

    Plaintiff(s),

v.

CITY OF STERLING HEIGHTS, ET AL.,

    Defendant(s).
_____/

Case No. 04-72717

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff Zabel Amiri ("Plaintiff") filed a complaint against Defendants alleging violations of the Fourth and Fourteenth Amendments. Defendants, claiming that no constitutional violation occurred, filed a motion for summary judgment. For the reasons stated below, the Court GRANTS Defendants' motion.

**I.   Factual and Procedural History**

On March 10, 2003, Plaintiff was pulled over by Defendant Salvatore Grammatico ("Grammatico"), a Sterling Heights Police Officer. (Compl. ¶ 14.)[1] The stop occurred because, as Plaintiff was stopped at a red light, Salvatore entered her license plate into the Law Enforcement Information Network ("LEIN") database and discovered that the vehicle was listed as stolen. (Grammatico Dep. at 37; Def.'s Ex. D, LEIN printout.)

---

[1] Plaintiff's sister and nineteen year old nephew were also in the vehicle when the stop occurred. (Plaintiff Dep. at 23-24.) In addition, Defendant James Selewski ("Selewski") was also at the scene to back up Grammatico. (Grammatico Dep. at 37.)

Grammatico approached the car without drawing his gun. (Amiri Dep. at 35.) He then told Plaintiff to get out of the car. (Id. at 34.) He asked her who owned the vehicle and Plaintiff told him that it was her husband's car. (Id. at 35.) Grammatico then allegedly told Plaintiff she was under arrest. (Id. at 35.) Plaintiff was then placed in the back of Grammatico's patrol car. (Id. at 36.) She was not handcuffed or patted down. (Id. at 36, 39-40.)

Based on the LEIN report, the vehicle was reported stolen by the Detroit Police Department. (Def.'s Ex. B.) Because the Detroit Police Department could not provide additional information and Plaintiff was claiming it was her car, Grammatico called for a supervisor. (Grammatico Dep. at 40-41.) Sergeant Denis Maue then arrived on the scene. (Id.) Plaintiff was then released. The incident took between 40 and 60 minutes.[2]

Plaintiff then filed a complaint against Grammatico, Selewski, and the City of Sterling Heights. She alleged that Grammatico and Selewski violated her constitutional rights and that Sterling Heights has a custom or policy that created these results. Defendants filed a motion for summary judgment.

## II.    Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

---

[2]In Plaintiff's deposition, she stated that she was in back of Grammatico's patrol car for one hour. (Amiri Dep. at 47.) According to Grammatico's log, however, the stop lasted 43 minutes. (Grammatico Dep. at 73.)

a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

**III. Analysis**

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.  "To maintain an action under § 1983, a plaintiff must establish that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law."  *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998)(quotation and citation omitted).

Defendants maintain that they are entitled to qualified immunity.

3

> Qualified immunity analysis involves three inquiries: (i) whether . . . the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred; (ii) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (iii) whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005)(quotations and citations omitted).

The first step is to determine whether a constitutional violation occurred. It is not disputed that Plaintiff's detention resulted in a seizure recognized by the Fourth Amendment. (Defs.' Br. at 5.) However, Defendants' allege that, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), the seizure was a reasonable investigatory detention. Plaintiff, on the other hand, contends that the stop was not reasonable and therefore ripened into an arrest.

There exists "a dual inquiry for evaluating the reasonableness of an investigative stop." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). Specifically, a court must "examine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry*, 392 U.S. at 20).

For a law enforcement official to initiate a *Terry* stop, he "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. A police officer may derive reasonable suspicion from information provided by another police agency. *United States v. Hensley*, 469 U.S. 221, 229-233 (1985). Where the information relied on was incorrect, there still may be reasonable suspicion. *See, e.g., United States v. Dorais*, 241 F.3d 1124,

1130-31 (9th Cir. 2001); *see also Taggart v. County of Macomb*, 587 F.Supp. 1080, 1081-82 (E.D. Mich. 1982)(holding that, even where incorrect, "a LEIN check is an authoritative source upon which law enforcement officers may justifiably rely in making an arrest"). Thus, Grammatico had reasonable suspicion to make the stop.

The Court must therefore address the scope of the detention. Some of the facts regarding this issue are not contested: Plaintiff was required to sit in the back of Grammatico's patrol car; she was not handcuffed; and no force was used. There is, however, one relevant fact that is in dispute: Plaintiff claims that she was in the patrol car for an hour, but Grammatico states that, based upon the dispatch entries, the entire incident lasted 43 minutes.[3] Because this is Defendants' motion for summary judgment, the facts are taken in the light favorable to Plaintiff.

To determine whether the scope of the seizure is reasonable, courts consider a variety of factors such as "the transportation of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force." *United States v. Richardson*, 949 F.2d 851, 857 (6th Cir.1991). In other words, "[a]n investigative Terry stop may ripen into a *de facto* arrest through the passage of time or the use of force." *Weaver v. Shadoan*, 340 F.3d 398, 408 (6th Cir. 2003)(citation omitted).

---

[3]Plaintiff makes other allegations that are not relevant in defining the scope of the detention: Grammatico told her to "shut up," he wouldn't let her talk to her husband and mother on her cellular phone, he told her she was under arrest, etc.

Plaintiff claims to have been detained in the back of a patrol car for one hour. There is no "bright line" rule, based on the time of the detention, separating an arrest from a *Terry* stop. The Supreme Court has stated, however, that

> [i]n assessing whether a detention is too long in duration to be justified as an investigative stop, [a court must] examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. . . . [T]he court should not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*Sharpe*, 470 U.S. at 686-87 (quotation and citations omitted).

In this case, Grammatico pursued a reasonable and diligent investigation: he requested that a dispatch agent contact the Detroit Police Department–the agency that entered the car as stolen–to confirm the report and asked for a supervisor to come to the scene. In this case, the dispatch agent was unable to get further information from the Detroit Police Department. When a supervising officer did finally arrive, Grammatico and the supervisor determined that Plaintiff should be released because she was in possession of documents showing that she was a legal owner. The situation was explained to Plaintiff and she was let go.[4]

---

[4] The Court also notes that English is not Plaintiff's first language and she sometimes has difficulty speaking and understand the language. *(See generally* Amiri Dep.) The added difficulty in communication between Plaintiff and Grammatico would prolong the detention.

6

It is not unreasonable for all of these steps to take up to an hour.  In, *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir.1999), for instance, the court found that a detention which lasted thirty-five minutes to an hour was not an arrest.  In that case, the amount of time was necessary to "ensure the officers' safety [and] to confirm or dispel their suspicions" that the suspects were involved in a serious and violent crime.  *Id.*; *see also United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995)(holding that 30 minute detention was not unreasonable because officers made diligent phone calls in an effort to confirm the suspicions which lead to the detention).[5]

Keeping Plaintiff in the patrol car did not transform the detention into an arrest.  *See United States v. Foster*, 376 F.3d 577, 587 n.9 (6th Cir. 2004)(noting that "detention in a police cruiser does not automatically transform a Terry stop into an arrest")(quotation and citation omitted).  The amount of force used must be reasonable in light of the circumstances.  In *Houston*, for example, the court found the detention permissible even when multiple police officers stopped the two suspects at gunpoint, handcuffed them, and forcibly placed them into patrol cars because the plaintiffs were suspected of participating in a violent crime.  *Houston*, 174 F.3d at 814-15.

---

[5]There are cases, as Plaintiff points out, that find that a detention as short as 20 minutes constitutes an arrest.  *See, e.g., Peterson v. City of Plymouth*, 945 F.2d 1416 (8th Cir. 1991).  But, as pointed out, the application of the rule depends on the circumstances of each case; there is no "bright line" rule.  Here, considering the circumstances, the length of time was reasonable.

7

Likewise, in this case, the limitations on Plaintiff's freedom were necessary in light of the circumstances.[6] Grammatico suspected that Plaintiff was in possession of a stolen vehicle. It was reasonable for him to infer that a person committing this crime may attempt to flee. Thus, the restraint was not excessive and did not transform the detention into an arrest.[7]

Plaintiff complains that Grammatico allegedly did not immediately examine her driver's license and the vehicle registration upon initiating the stop. As pointed out in *Sharpe*, however, it is not for this Court to engage in "*post hoc* evaluation of police conduct" when the officer's actions were reasonable. In this case, once Plaintiff stated that the vehicle

---

[6] The cases cited by Plaintiff found that the circumstances constituted an arrest; but, the types of crimes investigated and the facts which created a reasonable suspicion do not create an appropriate analogy to the facts here. *See United States v. Richardson*, 949 F.2d 851 (6th Cir. 1991)(suspect was believed to be involved in narcotics trafficking, but only limited evidence suggested this: he was staying with a man known to be involved in the distribution of drugs and suspect was hanging around storage lockers; thus, placing in patrol car after suspect refused to be searched was not reasonable); *Oliveira v. Mayer*, 23 F.3d 642 (2d Cir. 1994)(not a reasonable *Terry* stop when third-party reported that suspects were driving dilapidated vehicle with out of state license plates in affluent neighborhood and were in possession of expensive looking video camera, police surrounded vehicle then, with guns drawn, ordered suspects out of vehicle, handcuffed and patted them down); *United States v. Anderson*, 981 F.2d 1560 (10th Cir. 1992)(holding that district court's ruling that an arrest was made was not clearly erroneous where officers stopped suspect, drew guns and did not allow to leave; Court did not analyze the situation under the *Terry* framework); *United States v. Codd*, 956 F.2d 1109 (11th Cir. 1992)(detention was arrest where suspect was detained for two and one-half hours and handcuffed to a chair because her husband recently escaped from prison); *United States v. Ricardo D.*, 912 F.2d 337 (9th Cir. 1990)("[T]aking hold of and isolating an unarmed, compliant juvenile in the back of a police car was unnecessarily coercive, and thus transformed the investigatory stop into an arrest.").

[7] As Plaintiff correctly points out, "when a law enforcement officer no longer has any reasonable suspicion of criminal activity, the detained individual is constitutionally free to leave . . . ." *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998)(en banc), *cert. denied*, 525 U.S. 1123 (1999)  In this case, however, once it became unclear whether the car Plaintiff was operating was actually stolen, she was released.

belonged to her husband, Grammatico had the dispatch agent attempt to contact the Detroit Police Department and then called for a supervisor. These were reasonable steps and, thus, the Court will not second guess his investigation.

Plaintiff also alleges that Grammatico told her that she was under arrest. This does not, as Plaintiff contends, transform the detention into an arrest.[8] It is not the law enforcement officer's duty to make the legal determination about what constitutes an "arrest" and what is an "investigative stop." This is the job of the courts. And, to make this distinction, courts look at the reasonableness of the detention by analyzing the factors addressed above–amount of force used, the length of the detention, etc. That Grammatico is alleged to have told Plaintiff she was under arrest does not add much to this analysis. Importantly, it does not make the detention unreasonable.

Plaintiff's claims against Selewski and the City of Sterling Heights are based on her allegation that Grammatico violated her Fourth Amendment rights. Because he did not, Plaintiff's claims against Selewski and the City of Sterling Heights are also without merit.[9]

---

[8] Plaintiff cites the dissent in *United States v. Bohannon*, 225 F.3d 615 (6th Cir. 2000), for the proposition that an officer's verbal command can transform a *Terry* stop into an arrest. Contrary to Plaintiff's assertion, the case does not make such a holding. The dissent does cite to a district court case, affirmed by the Seventh Circuit, that found a verbal command sufficient to create a seizure. Courts use different standards, however, when differentiating between seizures/non-seizures and *Terry* stops/arrests.

[9] The Court notes that, even if Plaintiff's Constitutional rights were violated, Defendants Grammatico and Selewski are entitled to qualified immunity because a reasonable officer would not have known that the conduct violated those rights. Moreover, Plaintiff has not established any evidence of a Sterling Height's policy or custom that would lead to this violation.

**IV.  Conclusion**

For the reasons stated above, Plaintiff's constitutional rights were not violated. Therefore, the Court hereby orders that Defendants' motion for summary judgment is GRANTED.

SO ORDERED.


                                s/NANCY G. EDMUNDS
                                Nancy G. Edmunds
                                United States District Judge

Dated:  April 27, 2005